{¶ 30} I concur with the majority opinion, but write to address argument appellant raises. The defense argues that the consecutive sentences are disproportionate to similar offenses. He cites R.C.2929.11(B), which requires that a sentence for a felony be reasonably calculated to achieve two overriding purposes, one of which is that it be "consistent with sentences imposed for similar crimes committed by similar offenders."
{¶ 31} The defense did not, however, provide data to demonstrate that the sentence was inconsistent with other sentences for similar crimes by similar offenders. Nor did the prosecutor supply adequate data on this question, although the prosecutor did advise the trial judge what would be consistent with her previous sentences. I am not aware of any data base or record of sentences imposed that systematically arranges comparative information on similar offenses by similar offenders in Ohio.
{¶ 32} In Ohio Felony Sentencing Law, (5 Ed. 2001) 535, Section T4.51 Griffin and Katz see three tasks to achieving consistency: (1) that judges treat co-defendants consistently; (2) that judges maintain "records of their own sentences and * * * establish general sentencing policies for some common violation * * *"; and (3) that multi-judge courts "maintain information on sentences of various judges and even to establish sentencing policies or practices with respect to frequently recurring offenses."
{¶ 33} Griffin and Katz add appellate review as the fourth means of achieving consistency. However, they acknowledge that appellate courts "cannot be expected to have reliable information about sentencing practices outside of their own districts" "until data is systematically collected and made available on a statewide basis * * *." I would add there is an additional problem in each appellate court independently developing its own data base. An appellate court is most likely to stumble when it undertakes its own research without giving any opportunity to parties to challenge its conclusions. Moreover, it is inefficient to have each appellate court in Ohio separately develop a computer program for such a project. Currently, funding is too minimal for public defenders, prosecutors, and each court to perform this research independently.
{¶ 34} Any data base that is developed, furthermore, must provide universal access. Griffin and Katz cite the case of State v. Troyer
(Mar. 7, 2000), Cuyahoga C.P. No. CR-379460 in which the prosecutor supplied the court with a list of seventy-nine prior sentences for the same statutory offense. How would a solo practitioner defend against such a lengthy list? What resources are available and economically feasible for opposing counsel to insure that relevant cases were not omitted and that all the cases cited were similar? Because of the large numbers of similar offenses likely, especially in a busy court such as Cuyahoga County Common Pleas, a computer program with relevant factors designed by a neutral source is essential. Then both sides, along with the court, would have a reliable body of data they could rely upon.
{¶ 35} Until that data is available and accessible, appellate courts will be able to address the principle of consistency only to a very limited degree.